## Lewis v. Ralston.

.(Decided February 20, 1917.)

### Appeal from McCreary Circuit Court.

1. Schools and School Districts—Graded Schools—Officers to Hold Election for Trustees.—After a graded school has been established, the trustees have the right to appoint the officers of election, and one judge and a clerk appointed by the board may hold an election for trustees.

2. Elections—Officers Must Sign Election Returns.—An officer of election cannot refuse to sign the election returns on the ground that over his protest illegal votes were cast or legal votes rejected. He must sign and certify the returns as they appear at the close of the election, although, as a matter of fact, illegal votes may have been cast or legal votes rejected.

3. Elections—Mandamus—To Compel Officers to Sign and Certify Returns.—Officers of election may be compelled by mandamus to sign and certify election returns.

O. H. WADDLE & SONS for appellant.

STEPHENS & STEELEY and L. G. CAMPBELL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

At an election held for the purpose of electing a trustee of the Greenwood graded common school, Thomas Ralston, the appellee, and one W. G. Cook were the opposing candidates. There were polled at the election 116 votes, 61 votes being cast for Ralston and 55 for Cook, thus showing Ralston to have received a majority of 6 votes.

Henry F. Lewis, the appellant, was the judge, and L. C. Patterson the clerk of the election, there being no other officers. After the votes had been cast and recorded by Patterson, the clerk, on the poll books, Lewis refused to sign or certify the poll books to the trustees of the district, and thereupon Ralston, who according to the recorded vote on the poll books had been elected, brought this suit against Lewis, asking for a mandamus against him to compel him to sign the poll books certifying the result of the election and deliver them to the board of trustees.

In defense to this suit, Lewis, after admitting that the trustees of the district had appointed him as judge and Patterson as clerk to hold the election, averred that the board of trustees had no authority to appoint himself and Patterson to hold the election, although he admitted that they did hold it. He also admitted that 116 votes were cast and that, according to the record as shown on the poll books, Ralston received 61 votes and Cook 55. He then charged that Patterson, the clerk, over his protest and objection, permitted 11 illegal votes to be cast for Ralston, and that the clerk refused, over his protest, to permit two legal voters to cast their votes for Cook.

He further averred that he should not be required to sign the poll books because the board of trustees had no authority to appoint himself and Patterson to hold the election, and the election held by them was void and of no effect, as well as for the further reason that if the illegal votes recorded for Patterson were deducted from

his vote, and the names of the legal voters who were refused the right to vote for Cook were added to his vote, Cook and not Ralston was elected.

A reply controverting the allegations of the answer was filed, and the case being submitted, there was a judgment directing Lewis to sign and certify the poll books and return them to the trustees. From this judgment Lewis prosecutes this appeal.

It may at this point be noticed that counsel for appellant insist that no reply to the answer was filed until after the judgment had been rendered and therefore in disposing of the case the reply controverting the answer should not be considered on this appeal. The record, however, does not support counsel in this contention; but if no reply had been filed, it would not affect the result, if the board of trustees had a right to appoint Lewis as judge and Patterson as clerk to hold the election and they did hold it. If the board of trustees had no authority to appoint these two officers, to hold the election, of course the entire proceeding was a nullity, and this fact would furnish sufficient reason to justify Ralston in refusing to sign and certify the poll books. But if these officers did have the right to hold the election, then the refusal of Lewis to sign and certify the poll books and deliver them to the trustees cannot be excused on the ground that over his protest a sufficient number of illegal votes were cast at the election for Ralston and recorded by the clerk to change the result of the election, or upon the ground that the clerk wrongfully refused to record on the poll books the names of legal voters who desired to vote for Cook.

When an election is held by officers authorized to hold it, these officers cannot refuse to certify the returns as shown by the poll books or by the ballots, as the case may be, on the ground that illegal votes were allowed to be cast or legal votes rejected. The duties of these election officers in respect to signing and certifying poll books and election returns are purely ministerial and they may be compelled by mandamus to perform this ministerial duty. It is entirely beyond the scope of the authority of election officers to purge the election returns to suit their own notions, or to set themselves up as a contest board. They must sign and certify the returns as they appear at the close of the election, although as a matter of fact illegal votes may have been cast or legal votes rejected.

In challenging the right of the two officers appointed by the board of trustees to hold the election, counsel for Lewis, while conceding the right of the board of trustees to appoint the two officers, insist that the sheriff of the county, or his deputy, must also be present as sheriff of the election in order to make it a valid election. Sections 4466 and 4467 of the Kentucky Statutes make it the duty of the sheriff of the county to call and hold an election when a graded school district is sought to be established as provided in section 4464, and the further duty of the sheriff to appoint a judge and clerk to hold this election. But in section 4485 it is provided that after the graded school has been established and the trustees elected, the board of trustees shall appoint the officers to hold all other elections. The sheriff of the county has no duty to perform in connection with any graded school election except the first one at which the graded school is established. Thereafter the appointment of officers, the holding of elections and receiving of returns, is lodged in the board of trustees. An election held for the purpose of electing a trustee may be held by two officers, but if it is an election to ascertain the sense of the people on the subject of levying a tax and issuing bonds for the benefit of the school, the election must be held by four election officers, because the statute in section 4481 so provides: Hughes v. Roberts, 142 Ky. 142.

Wherefore, the judgment is affirmed.