Chief Justice Robertson
delivered the Opinion of the Coiirt;
William Rodes filed a bill in Chancery against John Maude, Clifton Rodes, and Archibald W. Goodloe, praying for a decree dissolving a co-partnership into which they had all associated, for manufacturing hemp into cotton bagging, by a new contrivance of machinery to be propelled by steam; and also, for damages, against Maude, for an alleged fraud, in falsely affirming the utility of such machinery, and in deceitfully commending himself as well qualified, by practice, to conduct it successfully and with great profit; and for damages also, for an alleged misappropriation of money and other property confided to his care, as the practical and operative partner.
Among other things, which we shall not now repeat, the bill alleged that, by the contract of partnership, all the capital was to be furnished, and had been furnished, "by the complainant and by Clifton Rodes and Archibald W. Goodloe; that Maude was to superintend and conduct the “factory,” and was, therefor, to be entitled to one fourth part of the neat profits; that, after the entire establishment had, according to Maud’s instructions, *145 been, at an enormous expense, completed, the whole contrivance was ascertained to be altogether useless and unfit for the desired end; and that the parties had; therefore, voluntarily dissolved the partnership, by a parol agreement; but that Maude had “removed from this state” insisting that he would still enforce the contract for the co-partnership.
One of four partners in a factory-filed his bill againstthe others, charging, that one of the def’ts,who was to furnish skill &c—no oapi tal,had,by deceitful representations, induced a large expenditure of the money of the others, forma cbinery that proved utterly useless, and had, hi other ways also, misapplied the funds — praying (among other things) for damages occasioned by these alleged frauds &c. which were assessed by, a jury: those dam ages belonged to three partners jointly; a decree, therefore, in favor of one, for the whole sum—unless he shows that he has succeeded to the rights of the other—cannot be sustained: norcan one be permitted to sue separately, for his own share, leaving grounds for other suits among the rest.—A suggestion in the decree, that the three injured partners had settled their interests, will not cure the error, as a settlement among them, would not necessarily bar their suits against the offender.
Maude having been proceeded against, by publication, as a non-resident, and having failed to answer, the bill was taken for confessed against him, as also against Clifton Rodes and A. W. Goodloe; and, thereupon, the Court having decreed a dissolution of the partnership, and a jury having assessed the complainant’s damages to one thousand five hundred dollars—a decree was rendered against Maude, therefor, and, on a suggestion that the other parties had adjusted the subject matters of the suit among themselves, the bill was dismissed as to Clifton Rodes and A. W. Goodloe.
Of that decree Maude now complains.
Were the jurisdiction of the Court conceded without qualification, we should still be of the opinion that the decree for damages should not be sustained; for the claim to damages is asserted against Maude alone, and if it be just, it belongs equally to all his co-partners; and no one of them should, by a bill in chancery, taken for confessed, be permitted to maintain a suit for his separate and undivided interest, or to obtain a decree, in solido, for the entire damages to the whole concern, unless it had appeared, that his co-claimants had transferred to him their interests, or their right to enforce them against Maude. The decree rather imports that only the interest of the complainant was considered and assessed; but, had it been otherwise, it would not necessarily bar other suits by Clifton Rodes, and A. W. Goodloe, for their interests; for, although the record shows, that they and the complainant had adjusted their respective rights, yet it does not assert or imply, that they had conceded to him their claims to damages from Maude, or *146 that those claims had been assessed, so as to conclude them hereafter. Now surely a Court of Equity ought not thus to sever a common right, and, by deciding on only a part, leave the residue to be adjusted by future suits, maimed and distorted by embarrassing severance. Equity will not, under ordinary circumstances, allow a partial proceeding which may leave room for further litigation respecting the same matter, but requires that all interests in the same subject be concluded at once, and not by piece-meal.
To give a court of ch’y jurisdiction, a real-def’t, against whom the compl’t is entitled to a decree, must he found and served with process within the limits of the jurisdiction; or some property, ■or chose in action of his must be found there, upon which the court can proceed inrem. An absent def’t cannot be reached by merely joining others with him, as eo-def’ts,who are interested in thematter,where the interest is not such as to authorize a decree against any of them jointly with the absentee, for as to . him, the jurisdiction fails.
But it is also evident, as we think, that the other co-partners were made defendants for the purpose only of giving an ostensible jurisdiction as to Maude, who was understood and intended to be the only real defendant. As to the others, the bill suggests no motive for a suit for enforcing the contract of dissolution and asserts no claim whatever. In fact, Maude on the one side, and all his late co-partners on the other, seem to be the actual antagonists. And not only was there no decree against Goodloe and Clifton Rodes, but, as the bill did not allege, that either of them had disavowed or refused to abide the parol dissolution, or that there was any reason for apprehending a renunciation of it by either of them, there was no ground for a decree, to any extent, or for any purpose, against either of them.
Then, conceding that, as to Maude, a suit might be maintained for dissolution, or for a confirmation of the parol dissolution—nevertheless, as he was not within the reach of the Court, and it does not appear that he had any interest in the partnership property, or in any other estate, or chose in action within the limits of this state— therefore, as to him alone, the Circuit Court had no jurisdiction, either in rem or in personam. And it is well settled, that no jurisdiction could have been conferred by associating with him other fictitious defendants, against whom no decree was obtained, none sought, and no title to any shown.
According to the civil law, jurisdiction might have been maintained' at the forum domicilii, the forum rei sitce, or the forum rei gestee vel contractus. But common law jurisdiction, being either local or transitory, depends *147 altogether on the locale of the person, or thing, proceeded against, and is, therefore, only in personam, or in rem. And consequently, as neither Maude, nor any thing of his, or in which he had any interest, was, according to the allegations of the bill, within the jurisdiction of the Circuit Court, this case, tested by the common law, must be deemed to have been coram non judice, even if Goodloe and Clifton Rodes were properly made defendants.
The acts authorizingsuits against absent def’ts, ap ply only where they have effects upon which the court can proceed in rem; and as to whether they apply at all, to a non resident—q, The claim of a firm on one mem ber, for losses caused by his mis conduct, cannot be adjusted in a, suit to enforce an agreement for a dissolution;ifthe claim is not waiv ed, the remedy is at law.
The fact that a party ,overwhom the court would not otherwise have had jurisdiction, came in at the hearing, and objected to the jurisdiction, did not authorize a decree against him.—But having appeared here, he will be before the court below on the return of the cause,
The statutes of this state prescribing the mode of proceeding against absent defendants, upon constructive service by publication, apply only to suits in rem, where a thing gives jurisdiction, or to suits against a resident party, in which it may be necessary, for effectuating justice, that a non-resident should also be associated. And even how far those statutes should be deemed as applying to non-resident citizens of other states, we need not now decide.
Besides, were the jurisdiction for the purpose of decreeing a confirmation of the parol dissolution conceded, still as by that dissolution, any claim to damages for alleged fraud prior thereto, if not waived was left a distinct and independent ground for an action at law, the Circuit Court could not take cognizance of it, as incidental to the power to carry into effect the contract of dissolution.
The fact that Maude appeared by his counsel, on the hearing, and objected to the jurisdiction, did not authorize any decree against him.
But having now become a party in this Court, he will be before the Circuit Court on the return of the case to that Court, so far as the question of dissolution, at least, may be concerned.
Wherefore, for the reasons before suggested, the decree of the Circuit Court must be reversed, and the cause remanded.